IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-50998
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD CHRIS WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Western District of Texas
USDC No. A-98-CR-168-1-JN
_____

August 10, 2000

Before JOLLY, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:*

Richard Williams appeals his conviction and sentence on one count of possession with intent to distribute crack cocaine and one count of using or carrying a firearm during and in relation to a drug trafficking offense. Finding no error, we affirm.

I

Dino Warick was a police informant. In July 1998, he told Officer Russell Bleise, a member of the Capital Area Narcotics Task

_____

*Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Force, that Williams was a drug dealer. Bleise then had Warick telephone Williams to arrange to buy crack cocaine. During the call, Bleise testified that he "wanted to pick up six" without specifying exactly what that meant. Bleise and Williams then arranged to meet at an auto supply shop.

The police set up surveillance near the supply shop. When Williams arrived, the police saw another man in the car with him. The car entered the parking lot, drove around the lot, exited, and then drove around the block. Williams then pulled up next to another vehicle, got out of the car, and went to the driver's window of the other car.

Deputy Sheriff Gary Haston, a member of the surveillance team, had followed Williams from the auto shop. When he saw Williams by the driver's window of the other car, Haston turned on his lights and got out of his own car. Haston then patted Williams down and detected something that felt like plastic and a lump of money in Williams's pocket. When Haston reached for Williams's pocket, Williams ran.

During the ensuing chase, Haston saw Williams throw two items away. The first was a cellular phone, and the second was a couple of plastic bags containing about 100 crack cocaine rocks and a crack "cookie." The total amount of crack was about two ounces.

Police later found a gun under the driver's seat in Williams's car. Williams told police that the gun belonged to him, and police did not check it for fingerprints.

Williams was later charged with possession with intent to distribute crack cocaine and with carrying a firearm during and in relation to a drug trafficking crime. At trial, Bleise testified about several out-of-court statements by Warick. One such statement was Warick's telling Bleise that Williams was a drug dealer. Defense counsel did not object to this testimony. Bleise also testified that Warick had asked for "six" during Warick's phone conversation with Williams setting up the drug deal, and that Warick had asked Williams whether Williams would meet him at the auto supply shop. Defense counsel did object to this part of Bleise's testimony but was overruled.

Williams took the stand in his own defense. He admitted that Warick had called him and asked for "six," but he maintained that he had not known what this meant. He denied possessing drugs or the gun. Williams also presented testimony by the car's other occupant, Harvey Randall, who claimed that the gun was Randall's.

Williams was ultimately convicted. The court sentenced Williams by attributing six ounces of crack cocaine to him in determining his base offense level, rather than the two grams that

3

police found in the plastic bags.  Williams now appeals both his conviction and his sentence.

                                II

On appeal, Williams first challenges admission of Bleise's statement that Williams was a drug dealer.  Because there was no objection, we review for plain error.  United States v. Olano, 507 U.S. 725, 731-34, 113 S.Ct. 1770, 1776-78, 123 L.Ed.2d 508 (1993).  We find none here.  The erroneous admission of this hearsay statement did not "seriously affect the fairness, integrity or public reputation of the judicial process."  United States v. Alaniz-Alaniz, 38 F.3d 788, 791 (5th Cir. 1994).  There was substantial evidence at trial presented suggesting that Williams was a willing participant in drug dealing, so any error does not rise to the gravity required for plain error reversal.

Second, Williams challenges the admission of Bleise's testimony about Warick's side of the conversation with Williams.  Defense counsel did object to this testimony, which means that if we determine the admission was an erroneous abuse of discretion, United States v. Dickey, 102 F.3d 157, 163 (5th Cir. 1996), we must determine whether the error was harmless.  United States v. Rodriquez, 15 F.3d 408, 415 n.8 (5th Cir. 1994). Williams asserts that admission of Warick's statement that he wanted to "pick up six" was erroneous as inadmissible hearsay.  We disagree because

                                4

this was not hearsay. This was not a statement offered for the truth of the matter asserted, that is, that Warick wanted six ounces of crack cocaine. Fed. R. Evid. 801. The evidence was instead entered to demonstrate the circumstances that led the meeting at the auto supply shop. Williams also asserts that testimony about Warick's question to Williams concerning the location of their meeting was similarly erroneously admitted. But this was a question, not a statement that asserted anything. See United States v. Lewis, 902 F.2d 1176, 1179 (5th Cir. 1990)(explaining that a "statement" for hearsay purposes is an oral or written assertion or nonverbal conduct intended as an assertion). Thus, the district court properly overruled these hearsay objections.

Third, Williams contends that the evidence was insufficient to convict him of firearm possession "in relation to" the underlying drug trafficking offense. But because his counsel failed to renew a Rule 29 motion for acquittal at the close of evidence, we will reverse only if we find "a manifest miscarriage of justice." United States v. Galvan, 949 F.2d 777, 783 (5th Cir. 1991). "Such a miscarriage would exist only if the record is devoid of evidence pointing to guilt, or . . . [if] the evidence on a key element of the offense was so tenuous that a conviction would be shocking." Id. That is not the case here.

5

For a firearm possession to be "in relation to" the underlying offense, it "at least must 'facilitate[], or ha[ve] the potential of facilitating'" that offense. Smith v. United States, 508 U.S. 223, 237 (1993). The gun in this case was under Williams's seat in the car from which he was dealing drugs. A gun this accessible has the potential to facilitate drug dealing, either for purposes of self-protection or to obtain payment from those who hesitate to hand over their money. There was certainly no miscarriage of justice on this point.

Fourth, Williams challenges his sentence based on six ounces of crack cocaine, even though only two ounces were found. A district court's findings regarding drug quantity are reviewed for clear error. United States v. Vine, 62 F.3d 107, 109 (5th Cir. 1995). We find no such error here.

Application Note 12 to § 2D1.1 of the Sentencing Guidelines provides that in a reverse sting operation, the quantity of drugs for sentencing purposes is the agreed upon quantity, not the quantity actually delivered. This is true unless the defendant establishes that he or she did not intend to provide, or was not capable of providing, the agreed-upon quantity. U.S.S.G. § 2D1.1, comment.

In this case, there is ample evidence supporting the six-ounce amount. The presentencing report states that Warick ordinarily

purchased crack from Williams in six-ounce increments.  See United States v. Fitzgerald, 89 F.3d 218, 223 (5th Cir. 1996)(holding that a PSR ordinarily bears sufficient indicia of reliability that it may be relied upon by the district court in making factual determinations, and the burden is on the defendant to demonstrate that the PSR information is untrue).  Moreover, Williams himself admitted on the stand that Warick had asked for "six."  The fact that Williams failed in supplying the remaining four ounces is not evidence that he had not intended to sell a total of six ounces or that he would not be able to do so in the near future.  See Vine, 62 F.3d at 110.  Williams put on no testimony of his own to rebut this evidence.  Thus, he has failed to meet his burden on this point.

III

For the reasons stated herein, the conviction is

A F F I R M E D.