IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 00-60606

Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CLIFTON ANDERSON, JR.

Defendant-Appellant.

Appeal from the United States District Court
For the Northern District of Mississippi
(2:96-CR-85-1-S)

September 24, 2001

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Clifton Anderson appeals the sentence imposed by the district court following his guilty plea conviction of extortion under color of official right in violation of 18 U.S.C. § 1951 and conducting and attempting to conduct a financial transaction affecting interstate commerce involving property represented by law enforcement officers to be proceeds of unlawful activity in violation of 18 U.S.C. § 1956. Because we find that the district

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

court committed plain error in refusing to group the offenses we vacate Anderson's sentence and remand for resentencing. We reject Anderson's other arguments, however.

I

Clifton Anderson, an officer with the Mississippi Highway Patrol, arranged with Wyatt Williams, a local drug dealer, to set up a sham "arrest" of a drug courier traveling by automobile. Anderson would stop the vehicle and seize the drugs, then later Anderson would return the drugs to Williams, who would, true to form, deal the drugs. Williams was to give a portion of the proceeds to Anderson. The only flaw in this ingenious scheme was that Williams was acting as a confidential informant for law enforcement officials.

Williams told Anderson that a drug courier, accompanied by Williams, would travel from Memphis, Tennessee to Greenville, Mississippi with one kilogram of cocaine. Williams provided a description of their car and the timing of their trip. The two agreed that Anderson's share of the proceeds would be $12,000. The stop occurred on the evening of July 26, 1996. Williams was accompanied by an officer of the Mississippi Bureau of Narcotics posing as the drug courier.

Anderson stopped the vehicle and asked the "courier" if he had any drugs. The "courier" responded that he did, and Anderson took

2

the "cocaine," which was in fact a dummy package containing only sugar. Anderson was armed with his state issued firearm during this entire exchange. After taking the package, Anderson ordered Williams out of the car and when Williams acted as if to flee the scene, Anderson drew his firearm and threatened to shoot Williams. Anderson eventually allowed Williams and the "courier" to leave without arresting them.

On July 27, 1996, Anderson gave the package back to Williams, who was to sell the cocaine and remit half of the proceeds to Anderson. Williams gave Anderson $500 as partial payment at this time. Anderson received further wired payments from Williams of $500 and $2,500 on August 8 and August 21, 1996, respectively. These payments were represented by Williams as proceeds of the sale of the "cocaine."

II

We review a district court's interpretation and application of the sentencing guidelines *de novo*.[1] We review findings of fact for clear error.[2]

Anderson first contends that the district court erred in applying a two-level sentencing enhancement for possession of a

---

[1] *United States v. Henderson*, 254 F.3d 543, 543 (5th Cir. 2001).

[2] *Id.*

3

dangerous weapon, in this case his service firearm.[3] A two-level sentence enhancement may be applied if the district court finds by a preponderance of the evidence that the defendant possessed a dangerous weapon during the commission of a drug offense.[4] Anderson argues that since he was required to carry a firearm by virtue of his employment as a Mississippi Highway Patrol officer his sentence cannot be enhanced solely because of his possession of the firearm.

While we have previously found that possession of a dangerous weapon cannot be inferred solely from the fact that the defendant is a law enforcement officer,[5] we also have held that possession of a firearm by a law enforcement officer in the commission of an offense, if established by a preponderance of the evidence, allows for a two-level enhancement.[6] Anderson had his firearm with him when he made the traffic stop, when he forced the courier to hand over the "cocaine" and when he threatened Williams. While Anderson argues that the extortion had been completed by the time he used the firearm to threaten Williams, use is not required for the enhancement, merely possession. The fact that carrying a firearm was required by Anderson's employment does not mean it did not aid

---

[3] *See* U.S.S.G. § 2D1.1(b)(1).

[4] *United States v. Siebe*, 58 F.3d 161, 162 (5th Cir. 1995).

[5] *Id.* at 162.

[6] *United States v. Marmolejo*, 106 F.3d 1213, 1215 (5th Cir. 1997).

4

him in his extortion efforts. Anderson utilized his position as a law enforcement officer to extort the cocaine and "any incidence of that position which further facilitated the [crime] should properly be taken into account at sentencing."[7] Anderson has not borne his burden of proving that it is "clearly improbable" that his firearm was connected to the offense.[8]

## III

Next Anderson argues that the district court erred in determining the offense level based upon one kilogram of cocaine because the package Anderson actually seized contained only sugar. When extortion is committed for the purpose of aiding in the commission of another offense, the guidelines direct the court to apply the greater of the offense level for extortion and the offense level applicable to a conspiracy to commit that second offense.[9] In this case the court applied the offense level for a conspiracy to distribute one kilogram of cocaine.[10]

These facts are squarely controlled by Application Note 12 to U.S.S.G. § 2D1.1, which states:

---

[7] *Id.* at 1217.

[8] U.S.S.G. § 2D1.1(b)(1) App. n. 3 ("The adjustment should be applied unless it is clearly improbable that the weapon was connected with the offense.")

[9] U.S.S.G. § 2C1.1(c)(1).

[10] U.S.S.G. § 2D1.1.

"In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense....  In contrast, in a reverse sting, the agreed-upon quantity of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government, not the defendant."[11]

This case involves a reverse-sting.  Anderson believed that he was threatening a "drug courier" in order to obtain one kilogram of cocaine.  The fact that this was extortion rather than a direct purchase by Anderson is irrelevant—it adds only a layer of complexity that § 2C1.1(c)(1) addresses.

Anderson also argues that this presents a scenario factually analogous to those cases dealing with drug mixtures.[12]  We disagree—a reverse-sting is an altogether different beast.

IV

Finally, both Anderson and the Government agree that the district court erred in refusing to group the two offenses for

---

[11] *See also United States v. Perez De Dios*, 237 F.3d 1192, 1195 (10th Cir. 2001) (holding that agreed-upon quantity should be used to determine base offense level in reverse-sting operation where defendant received only a "dummy" package containing a small amount of drugs).

[12] *See, e.g., United States v. Levay*, 76 F.3d 671, 673 (5th Cir. 1996) (holding that where mixture must be separated before controlled substance can be used that only actual weight of controlled substance in mixture should be used for calculating a sentence).

sentencing purposes.[13]  Specifically, Anderson notes first that he was sentenced pursuant to the drug offense guidelines because his extortion was for the purpose of facilitating distribution of cocaine.  Then, in sentencing for money laundering, the court added a three-level enhancement for Anderson's knowledge that the funds were proceeds from illegal drug activity.  We agree with Anderson and the Government in concluding that these two offenses should have been grouped pursuant to U.S.S.G. § 3D1.2(c) and the precedents of this Court.[14]  While Anderson did not make this argument before the district court, and therefore our review is for plain error,[15] we find that error here is clear, and affects the defendant's substantial rights, because it resulted in an increased sentence.[16]

We will not correct plain error unless it seriously affects "the fairness, integrity or public reputation of judicial proceedings."[17]  "Generally, when a trial court incorrectly applies

---

[13] U.S.S.G. § 3D1.2.  Failure to group the two counts in this case resulted in a total offense level of 28 instead of 27.  Anderson was sentenced to 96 months based upon a total offense level of 28—grouping the counts would have provided for a maximum sentence of 87 months.

[14] *United States v. Rice*, 185 F.3d 326, 328-29 (5th Cir. 1999) (holding that money laundering offense and drug offense should have been grouped because three level enhancement for illegal drug proceeds was applied to money laundering offense).

[15] *United States v. Salter*, 241 F.3d 392, 394 (5th Cir. 2001).

[16] *United States v. Alderholt*, 87 F.3d 740, 744 (5th Cir. 1996).

[17] *United States v. Olano*, 507 U.S. 725, 736-37 (1993).  *See also United States v. Miranda*, 248 F.3d 434, 443 (5th Cir. 2001).

the United States Sentencing Guidelines, as it did here, the fairness, integrity, or public reputation of judicial proceedings is seriously affected."[18]  We find here that the failure to group Anderson's offenses for sentencing purposes requires that he be resentenced.

V

For the aforementioned reasons we VACATE Anderson's sentence and REMAND to the district court for resentencing.

---

[18] *United States v. Alarcon*, No. 00-50071, 2001 WL 871776 at *5 (5th Cir. Aug. 1, 2001).